[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 9, 2012
JOHN LEY
CLERK

No. 11-13878
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-01668-TGW


KRISTIE REYNOLDS-BUCKLEY,

Plaintiff-Appellant,


versus


COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 9, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

PER CURIAM:

Kristie Reynolds-Buckley appeals the district court's order affirming the Commissioner of the Social Security Administration's ("the Commissioner") denial of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"), 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, Reynolds-Buckley argues that the administrative law judge ("ALJ") erred by discounting the medical opinion of Dr. Nadim Khan regarding her heart condition.  After thorough review, we affirm.

We review a Commissioner's decision to determine whether it is supported by substantial evidence and whether the proper legal standards were applied.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. (quotation omitted).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation and brackets omitted).  We review the decision of the ALJ as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision.  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

The Social Security Regulations outline a five-step process used to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  Under the first step, the claimant has the burden to show that she is not currently engaged in substantial

2

gainful activity.  Id. § 404.1520(a)(4)(i).  Next, the claimant must show that she has a severe impairment.  Id. § 404.1520(a)(4)(ii).  She then must attempt to show that the impairment meets or equals the criteria contained in one of the Listings of Impairments.  Id. § 404.1520(a)(4)(iii).  If the claimant cannot meet or equal the criteria, she must show that she has an impairment which prevents her from performing her past relevant work.  Id. § 404.1520(a)(4)(iii) and (iv).  Once a claimant establishes that she cannot perform her past relevant work due to some severe impairment, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy which the claimant can perform.  Id. § 404.1520(a)(4)(v).

The Social Security Regulations also provide guidelines for the ALJ to use when evaluating medical opinion evidence.  See 20 C.F.R. § 404.1527.  The ALJ considers many factors when weighing such evidence, including the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record, and a doctor's specialization.  Id. § 404.1527(d).  Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless "good cause" is shown.  See id. § 404.1527(d)(1), (2); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Treating sources are given more weight because "these sources are likely

to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). To qualify as a treating source, the physician must have an ongoing treatment relationship with the claimant. See 20 C.F.R. § 404.1502. We have found "good cause" to afford less weight to a treating physician's opinion where the opinion was conclusory or inconsistent with the physician's own medical records or where the evidence supported a contrary finding. Lewis, 125 F.3d at 1440. The ALJ may discount a treating physician's report "when it is not accompanied by objective medical evidence or is wholly conclusory." Crawford, 363 F.3d at 1159 (quotation omitted). Because our limited review precludes us from reweighing the evidence, when the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).

In this case, regardless of whether Dr. Khan qualified as a treating source, the ALJ had good cause and properly articulated reasons, supported by substantial evidence, for assigning less weight to the opinion of Dr. Khan than to the contradictory opinions of other medical professionals. Indeed, Dr. Khan's opinion was inconsistent with the medical evidence on the record and was not supported by any treatment notes or by an analysis of any test results. Notably, Dr. Louis Castro,

4

a cardiologist, indicated that Reynolds-Buckley was "really not cognizant" of her heart racing when he examined her in 2007. After diagnosing Reynolds-Buckley with persistent tachycardia and running numerous cardiac tests, Dr. Caruso recommended only "risk factor modification and medical therapy." In addition, Dr. Aliya Rathore's reports indicate that Reynolds-Buckley had been able to control her tachycardia by taking medication. Moreover, after a monitoring test in February 2009 revealed that Reynolds-Buckley had a normal baseline sinus rhythm with intermittent episodes of sinus tachycardia, Dr. Sunil Gupta recommended only that Reynolds-Buckley take beta blockers or calcium channel blockers, and did not indicate any restrictions in her ability to work. Because Dr. Khan provided no independent treatment notes or analysis of test results to support his conclusions about the severity of Reynolds-Buckley's condition, and those conclusions contradicted Dr. Gupta's test-supported conclusions from less than three months earlier, the ALJ did not err in attaching little weight to Dr. Khan's opinion.

Although Reynolds-Buckley argues that, based on the February 2009 echocardiogram, her condition had deteriorated when she saw Dr. Gupta in 2009 compared to when she first saw Dr. Caruso in 2007, she has not shown that her disability had become so severe that it rendered her unable to work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding that "the 'severity' of a

medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Notably, the baseline rhythm of 89 beats per minute recorded by the monitoring test was actually an improvement from the 110-beats-per-minute rate from the 2007 electrocardiogram, and Dr. Gupta did not place any restrictions on Reynolds-Buckley's ability to work. Finally, although Reynolds-Buckley contends that the ALJ "cherry-picked" the medical evidence and substituted his own judgment for that of the medical professionals, the record reflects that the ALJ considered all of the medical evidence, including a questionnaire by Dr. Khan, and Reynolds-Buckley has not shown that any medical evidence, aside from Dr. Khan's, contradicted the ALJ's conclusion. Because the ALJ did not err in weighing the medical opinion evidence, we affirm.

**AFFIRMED.**